UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| ROBERT K. WILLIAMS | : | |
| Debtor | : | Bankruptcy No. 05-12998F |

..................................................

ORDER

..................................................

AND NOW, this 26th day of April 2005, upon motion of SFJV-2002-1 to

annul the bankruptcy stay pursuant to 11 U.S.C. § 362(d)(1),

And upon consideration of the debtor's opposition thereto,

And after an evidentiary hearing,

And the debtor filed the instant chapter 13 case on March 7, 2005,

And the debtor filed two prior chapter 13 bankruptcy cases in 2004,

docketed at Bankr. No. 04-14601 and 04-19719 respectively,[1]

And the debtor purchased the property at 1724 Conlyn Street, Philadelphia,

Pennsylvania in 2000, titled in his name only, for approximately $62,000.  He lives in the

property with his wife, her two children and their son,

And in December 2003, SFJV commenced a foreclosure action against the

debtor's realty.  Ex. M-1.   The foreclosure complaint alleged that the debtor entered into

a mortgage agreement with Cendant Mortgage Corp. in September 2000, which mortgage

was later assigned to SFJV.  Furthermore, the mortgagee contended that this mortgage

went into default in April 2003.  Id.,

---

[1]In all three cases, the debtor hired the same bankruptcy attorney.

And the debtor explained that this default in mortgage payments arose from his unemployment.  He had been employed for a number of years with Staples Corporation,

And a foreclosure judgment in the approximate amount of $65,000 was entered against the debtor by default.  Ex. M-6,

And SFJV scheduled the property for foreclosure sale in April 2004, which sale was stayed by the debtor's first chapter 13 bankruptcy filing on April 2, 2004.  This case was dismissed on April 30, 2004, due to the debtor's failure to timely file all required bankruptcy documents.  Ex. M-7,

And SFJV then rescheduled the foreclosure sale for September 2004.  This sale was stayed by the debtor's second chapter 13 bankruptcy filing on July 14, 2004.  Ex. M-8.  This case was dismissed on February 1, 2005, upon motion of the chapter 13 trustee, due to the debtor's failure to tender plan payments,

And the debtor claims he did not understand that his statutory obligation to tender plan payments to the trustee arose when he filed his proposed chapter 13 plan, not when he attended the meeting of creditors.  See generally 11 U.S.C. § 1326(a)(1),

And the debtor filed this third chapter 13 petition at 5:25 P.M. on March 7, 2005.  Ex. M-9,

And SFJV had scheduled a foreclosure sale for March 8, 2005.  There is no evidence that the debtor informed the mortgagee (or the Sheriff of Philadelphia County) of his latest bankruptcy filing prior to the sale.  Therefore, the foreclosure sale occurred as scheduled on March 8th, and SFJV was the successful purchaser,

And the debtor has filed virtually identical bankruptcy documents in all three cases (albeit the documents in the first case were filed after dismissal).  In each instance, he disclosed that the value of his residence was $60,000.  At the hearing held, he testified that this valuation was erroneous and that a similar home in his neighborhood sold for $87,000 approximately one year ago.  Therefore, he now considers his residence has a fair market value of $90,000,

And the debtor disclosed in all three chapter 13 cases, including this one, that his family's combined monthly income, after payroll deductions, was $2,200.  Exs. M-2, M-3, and M-4 (schedule I).  He also disclosed in all three cases that his monthly expenses were $1,960, and so he had $240 in disposable monthly income with which to reorganize.  Id.,

And the debtor acknowledges that he is approximately 24 months delinquent in mortgage payments, and such monthly payments are $560.  Therefore, his mortgage arrearage is about $13,440, plus attorney's fees and costs associated with the foreclosure lawsuit and three scheduled sheriff sales.  Those sales involve costs to the secured creditor approximating $2,000 each.  Thus, the mortgage arrearage in this third bankruptcy case likely exceeds $19,000,[2]

---

[2]I shall assume that the July 2004 filing, which stayed the September 2004 Sheriff sale, reduced advertising costs and resulted in a rebate to the creditor scheduling the sale.  I estimate that this rebate would have been no more than $800.

And the debtor filed a proposed chapter 13 plan calling for payments of $326.87 per month for 60 months, totaling $19,612.20. In contrast to my calculation, the debtor estimated the mortgage delinquency in this plan at only $12,000. Ex. M-5,[3]

And the debtor explained that he is presently employed by the Home Depot Corporation but now earns less than he earned prior to his unemployment in 2003. He also testified that he will soon start a part-time housekeeping job at St. Christopher's Hospital earning an additional $275 net every two weeks. This part-time job offer was made to him just before the hearing on the instant motion. His wife is employed at Jefferson Hospital and has been so employed since his first bankruptcy filing,

And, in general, the filing of a bankruptcy case just prior to a foreclosure sale acts to stay that execution by virtue of section 362(a). This is true even if SFJV was unaware of the bankruptcy filing.[4] See, e.g., In re Ward, 837 F.2d 124 (3d Cir. 1988). Thus, a foreclosure sale which occurs postpetition may be invalid as a violation of the bankruptcy stay, even though the mortgagee was unaware of the bankruptcy case.[5]

And SFJV now seeks to have the bankruptcy stay "annulled." Section 362(d) permits the automatic stay to be "terminat[ed], annull[ed], modif[ied] or condition[ed]." The Third Circuit Court of Appeals has instructed that "the inclusion of

---

[3]The plan is dated February 25, 2005, thus suggesting that the debtor met with his bankruptcy attorney weeks prior to the March 8th foreclosure sale, but counsel delayed until the eve of the sale to file the bankruptcy case.

[4]SFJV raises no issues under section 549(c), so I need not consider that statutory provision. See generally In re Purnell, 92 B.R. 625 (Bankr. E.D. Pa. 1988) (discussing the applicability of section 549(c) to a foreclosure sale when the mortgagee is the successful purchaser).

[5]The creditor's lack of knowledge, though, prevents that violation from being considered willful or contemptuous.

the word 'annulling' in the statute, indicates a legislative intent to apply certain types of relief retroactively and validate proceedings that would otherwise be void ab initio." In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994). As discussed by this same appellate court during a subsequent decision, and in connection with an analysis of the purpose of the bankruptcy stay:

> The purpose of the automatic stay is twofold: (1) to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance "to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy;" and (2) to protect "creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." Maritime [Electric Co. v. United Jersey Bank], 959 F.2d [1194,] 1204 [3d Cir. 1991].

> The stay is "automatic" because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed. The automatic stay cannot be waived. Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case. Id. A party in interest may obtain relief from stay, pursuant to § 362(d)(1), by requesting the relief from the bankruptcy court and, after notice and a hearing, showing cause. 11 U.S.C. § 362(d)(1).

> The automatic stay is of broad scope, directing that "[a]ll judicial actions against a debtor seeking recovery on a claim that were or could have been brought before commencement of a bankruptcy case, are automatically stayed." Maritime, 959 F.2d at 1203, 1206. Thus, "[o]nce triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." Id. at 1206. Unless relief from the stay is granted, the stay continues until the bankruptcy case is dismissed or closed, or discharge is granted or denied. 11 U.S.C. § 362(c). Once a stay is in effect, without relief from the bankruptcy court, "the parties themselves [can]not validly undertake any judicial action material to the ... claim against" the debtor. Id. at 1207. This includes the filing of motions, which are void ab initio, unless

the bankruptcy court later grants retroactive relief. [FN6] Id.
at 1207, n. 13.

> FN6. Generally, judicial actions and
> proceedings against the debtor are void ab initio
> absent relief from the stay.  Id.  We have,
> however, recognized that section 362(d), which
> requires the bankruptcy court to grant relief
> from the stay under certain circumstances and
> permits such relief to be applied retroactively,
> would allow the bankruptcy court to grant
> annulment of a stay, thereby making acts in
> violation of the stay voidable, rather than void
> ab initio.  See In re Siciliano, 13 F.3d 748,
> 750-51 (3d Cir. 1994).

Constitution Bank v. Tubbs, 68 F.3d 685, 691-92 (3d Cir. 1995) (emphasis added); accord

Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir.

1998),

　　　　And in this contested matter, SFJV expressly requests that the bankruptcy

stay be annulled under section 362(d)(1) so as to validate the sheriff sale which occurred

post-bankruptcy on March 8, 2005,

　　　　And, in general, whether to grant relief from the automatic stay under

section 362(d)(1), including the decision whether to annul the stay, is left to the discretion

of the bankruptcy court.  In re National Environmental Waste Corp., 129 F.3d 1052, 1054

(9th Cir. 1997).  In determining whether to exercise such discretion and retroactively

terminate the stay, courts have noted that annulment of the stay is appropriate only in

limited circumstances.  See, e.g., In re Stockwell, 262 B.R. 275, 280 (Bankr. D. Vt.

2001).  In order to help identify such circumstances, some courts have focused upon the

following two factors:

> Many courts have focused on two factors in determining
> whether cause exists to grant relief from the stay: (1) whether

the creditor was aware of the bankruptcy petition; and
(2) whether the debtor engaged in unreasonable or inequitable
conduct, or prejudice would result to the creditor.

In re National Environmental Waste Corp., 129 F.3d at 1055,

And other courts, in discussing the framework needed to justify annulling

the stay, parse the second factor into more specific components:

It is well recognized that a determination of whether to grant
relief from stay retroactively is within the wide latitude of the
Court with each decision being considered on a case-by-case
basis. . . .  The party seeking retroactive lift stay relief has the
burden of proving that the action taken in violation of the stay
falls within the narrow exceptions to the rule voiding actions
taken in violation of the stay. . . .  Similarly, under § 362(g),
the debtor has the burden of proof with respect to showing
equitable grounds for denying the requested relief. . . .

In order to determine whether the circumstances are
sufficiently compelling to warrant nunc pro tunc lift stay
relief, courts have considered a variety of factors:

(1) if the creditor had actual or constructive
knowledge of the bankruptcy filing and,
therefore, of the stay; (2) if the debtor has acted
in bad faith; (3) if there was equity in the
property of the estate; (4) if the property was
necessary for an effective reorganization; (5) if
grounds for relief from the stay existed and a
motion, if filed, would likely have been granted
prior to the automatic stay violation; (6) if
failure to grant retroactive relief would cause
unnecessary expense to the creditor; and (7) if
the creditor has detrimentally changed its
position on the basis of the action taken.

In re Stockwell, 262 B.R. at 280-81 (citations omitted); see also In re Wilkerson, 2004

WL 2977564, *3 (Bankr. E.D. Pa. 2004); In re Williams, 257 B.R. 297, 301 (Bankr. W.D.

Mo. 2001),

7

And the more general notion—that annulment of the stay should be limited to circumstances demonstrating "unfair prejudice" to a creditor—thus includes consideration whether the creditor seeking annulment had a valid legal basis for lifting the automatic stay at the time that the challenged action occurred but failed to request such relief because it was unaware of any bankruptcy filing.  See In re Syed, 238 B.R. 126, 133 (Bankr. N.D. Ill. 1999).  Moreover, since a creditor may obtain relief from the bankruptcy stay for "cause" under section 362(d)(1) when the evidence presented would support dismissal of the case due to a bad faith filing, see, e.g., In re Can-Alta Properties, Ltd., 87 B.R. 89, 91 (B.A.P. 9th Cir. 1988) (and cases cited); In re Harris, 192 B.R. 334, 337 (Bankr. W.D.N.Y. 1996); Matter of Nelson, 66 B.R. 231 (Bankr. D.N.J. 1986), aff'd without op., 838 F.2d 1207 (3d Cir. 1988); In re Augustus Court Associates, Ltd., 43 B.R. 352, 354 (Bankr. E.D. Pa. 1984), it follows that a court may consider the good faith of a bankruptcy filing when determining the appropriateness of granting annulment relief under section 362(d)(1),

And SFJV explicitly raises that issue by arguing that the March 7, 2005 bankruptcy filing by Mr. Williams was in bad faith because the debtor had failed in two prior reorganization attempts and there were no material changes in his circumstances to support any belief that this third attempt would be successful when the other two attempts were not,

And, in general, while the Bankruptcy Code does not contain any express limitation on refiling a bankruptcy case after another is dismissed—unless the dismissal order contains such a prohibition, see In re Casse, 198 F.3d 327 (2d Cir. 1999), or the provisions of section 109(g) apply—many courts have recognized that it is inappropriate

8

for a debtor to file another bankruptcy reorganization case (under chapters 11, 12, or 13)

after dismissal of an earlier one, unless there has been a material change of circumstances

"between dismissal of the prior case and commencement of the new case," In re Huerta,

137 B.R. 356, 368 (Bankr. C.D. Cal. 1992), which demonstrates that the second (or later)

reorganization attempt now has a possibility of success after the first had failed.  See,

e.g., Matter of Elmwood Development Co., 964 F.2d 508 (5th Cir. 1992); In re Chisum,

847 F.2d 597 (9th Cir.), cert. denied sub nom. Mortgage Mart, Inc. v. Rechnitzer, 488

U.S. 892 (1988); In re Johnson, 708 F.2d 865 (2d Cir. 1983); In re Oglesby, 158 B.R.

602 (E.D. Pa. 1993); In re McKissie, 103 B.R. 189, 192 (Bankr. N.D. Ill. 1989),

And serial or successive bankruptcy filings may be evidence of misuse of

the bankruptcy process, intended only to forestall the collection efforts of creditors and

not filed in good faith.  See, e.g., In re Huerta, 137 B.R. at 367.  The "kind of 'changed

circumstances' required to justify a successive filing must be positive changes" reflecting

on the debtor's ability to successfully reorganize under chapter 13.  Id. at 368,

And when a party in interest shows that there have been repeated

unsuccessful bankruptcy reorganization filings, the debtor has the evidentiary burden to

demonstrate that his circumstances have materially changed so there is some likelihood

that the present reorganization case will succeed.  A failure to do so may permit a court to

"reasonably infer that the successively filed case or cases were commenced solely to

prevent or delay foreclosure."  Id., 137 B.R. at 369; see In re McKissie, 103 B.R. at 192,

And this evidentiary burden is consistent with the allocation of the burden

of persuasion established by the Third Circuit Court of Appeals in non-chapter 13

bankruptcy cases when a party seeks dismissal for a bad faith filing.  See In re Tamecki,

9

229 F.3d 205, 207 (3d Cir. 2000); In re SGL Carbon Corp., 200 F.3d 154, 162 n.10 (3d Cir. 1999). Essentially, once the moving party demonstrates serial filings, the debtor must come forward with evidence demonstrating that the bankruptcy process is not being misused,

And when an individual has filed many failed reorganization cases, as in this instance, the evidence needed to demonstrate a material change in circumstances supporting a reasonable possibility of reorganization grows heavier. See In re LeGree, 285 B.R. 615, 620 (Bankr. E.D. Pa. 2002),

And in determining whether a bad faith filing exists, the bankruptcy court has the discretion to reach the appropriate result for a particular case based upon all of the circumstances. See In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996); Matter of Love, 957 F.2d 1350, 1354 (7th Cir. 1992); In re Mazzocone, 180 B.R. 782 (E.D. Pa. 1995),

And the debtor maintains in this instance that his two prior unsuccessful bankruptcy cases were attributable solely to a misunderstanding on his part, or mis-communications between himself and his attorney, rather than upon an inability to fund a plan. That conclusion is unlikely from this evidentiary record,[6]

---

[6]If I accept that the debtor became delinquent in his mortgage payments as of April 2003, then on July 14th, 2004— the date of his second filing—he was 16 months delinquent. The mortgagee's attorney alleged that the creditor was entitled to reimbursement of $550 in attorney's fees and costs associated with commencing the foreclosure action. Ex. M-1. There would be additional fees and costs connected with twice listing the property for sheriff sale.

Sixteen delinquent monthly payments of $560 each totals $8,960. If I estimate that prepetition attorney's fees were only $650, and two sheriff sale listings—with credit for an $800 rebate in advertising costs—were $3,200 (the cost per sale is presently about $2,000), then the prepetition mortgage delinquency in July 2004 was about $12,800. If the debtor's property is valued at $90,000, then this secured arrearage claim must be repaid with interest over the life of the chapter 13 case. See Rake v. Wade, 508 U.S. 464 (1993) (oversecured mortgagee is entitled

(continued...)

And it is even more clear that the debtor could not propose a viable chapter

13 plan of reorganization when he filed his third case on March 7, 2005.  By that time, the

mortgage delinquency had substantially increased from the amount due in July 2004—by

virtue of additional missed mortgage payments and costs associated with a third

scheduled sheriff sale—and his disposable income on that date was exactly the same as

was available during his second case,

And while the postpetition offer of part-time employment to the debtor may

now provide him with enough income to fund a plan, neither the job offer nor its income

existed when the third bankruptcy case was filed.  As the issue posed by the mortgagee is

whether this third chapter 13 bankruptcy petition was commenced in good faith under

section 1307(c) (rather than whether the debtor has proposed a chapter 13 plan in good

faith under section 1325(a)(3)), the material change of circumstances must be present at

the inception of the new case.  See, e.g., In re Pike, 258 B.R. 876, 885 (Bankr. S.D. Ohio

2001); In re Huerta, 137 B.R. at 368;  ("The Debtors have not produced any evidence

---

[6](...continued)
to interest on its arrearage claim in bankruptcy).

In addition, the debtor discloses a priority federal tax claim of $994 in each of his bankruptcy cases.  See Ex. M-3 (schedule D).  He also intends to pay his chapter 13 attorney $1,100 in fees through plan payments.  See Ex. M-3.  This fee is also a priority claim.  See 11 U.S.C. §§ 330(a)(4)(B), 503(b) and 507(a)(1).  Priority claims must be repaid in full, with interest, in a chapter 13 case.  See 11 U.S.C. § 1322(a)(2).

Finally, the chapter 13 trustee is entitled to charge a commission on all distributions made to creditors under a confirmed plan.  28 U.S.C. § 586(e).  As of July 2004, that commission charge was about 7%.

Even without considering the requisite post-bankruptcy interest, payment of the mortgage arrearage, priority tax claim, priority attorney's fee, and trustee's commission would equal approximately $15,947.  To repay this total over sixty monthly payments would require the debtor to pay $266 per month—more than the $240 available to him in monthly disposable income.  If one includes postpetition interest, it becomes even more unlikely that the debtor could have proposed a viable chapter 13 plan in July 2004.

11

that there has been a bona fide objective change in their circumstances since the filing

and dismissal of the first Chapter 13 case to justify the filing of their serial case."),

And considering all of the evidence presented—the debtor's three chapter

13 filings in less than one year; his inability to fund a viable plan in his second case and

also when he commenced his third case; and his failure to notify the mortgagee of his

latest bankruptcy filing until after the sale—I conclude that the appropriate exercise of

discretion is to grant the instant motion and thereby annul the automatic stay.  See In re

Wilkerson,

Accordingly, it is hereby ordered that the bankruptcy stay is terminated

retroactively to March 7, 2005, pursuant to 11 U.S.C. § 362(d)(1), and thus the March 8th

sheriff sale did not violate section 362(a).


_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Mr. Robert K. Williams, Jr.
1724 Conlyn St.
Philadelphia, PA 19144

Michael P. Kutzer, Esq.
1528 Walnut Street
Suite 1401
Philadelphia, PA 19102-3604

Andrew Spivack, Esq.
Federman & Phelen LLP
One Penn Center at Suburban Station
16 & JFK Blvd, Suite 1400
Philadelphia, PA 19103

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall
Suite 583
Philadelphia, PA 19106